Margaret OVERHOFF, Plaintiff,

v.

GINSBURG DEVELOPMENT, L.L.C., Northeast Drilling, Inc., Northbrook Contracting Corp., the Village of Dobbs Ferry, Michelle Bonsteel, Margaret Slavin, and "Richard Doe," Defendants.

No. 00 CIV. 6196(CM).

United States District Court, S.D. New York.

May 16, 2001.

Lewis R. Silverman, Renzulli & Rutherford, L.L.P., New York City, for Defendants.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Margaret Overhoff brings suit against Ginsburg Development, L.L.C. ("GDC"), Northeast Drilling, Inc. ("Northeast"), and Northbrook Contracting Corp. ("Northbrook") for trespass, negligence, intentional infliction of emotional distress,

and against the Village of Dobbs Ferry ("Dobbs Ferry"), Building Inspector Michelle Bonsteel, Village Administrator Margaret Slavin, and "Richard Doe" for violation of her constitutional rights under 42 U.S.C. § 1983, as a result of Village officials' failure to stop GDC from building a wall that encroached on her property. This action was commenced in the Supreme Court of the State of New York, Westchester County, on June 8, 2000. It was timely removed to this Court on August 17, 2000.

Defendants Dobbs Ferry, Bonsteel, Slavin, and "Richard Doe" move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss plaintiff's § 1983 claims.

## FACTUAL BACKGROUND

Plaintiff Margaret Overhoff owns property at 33 Livingston Avenue in Dobbs Ferry, New York. For many years, the property next door was an undeveloped area that developers sought to use for a housing cluster. After conducting an environmental review that lasted from 1989 to 1995, the Village Board approved a plan to develop the adjacent lot on December 3, 1996. The plan required the developer to present and to seek approval of construction plans, and to detail every aspect of construction.

On August 21, 1998, the property was sold to the current owner, Ginsburg Development L.L.C. ("GDC"). During the period from the acquisition of the property through approximately June 1999, GDC presented and secured various approvals from the Village to amend the 1996 resolution. On June 17, 1999, GDC's consulting engineer sent a set of plans to GDC (and copied them to the Village) indicating that a retaining wall was to be constructed in a way that could encroach on plaintiff's property.

The construction on the site—now called Livingston Ridge—began in earnest in early 1999.

In April 1999, one of the Village consulting engineers noted that the GDC's site improvements did not conform to approved plans and encroached on the property of a neighbor to the south—Dr. Christine Sekaer. As a result of GDC's work, a slope failure had adversely impacted Sekaer's property and presented a safety risk. Building Inspector Bonsteel issued a stop work order and a imposed a requirement on GDC to secure an easement for any work on the adjacent property. On April 7, 1999, Bonsteel imposed several restrictions on GDC's work, including a requirement that GDC provide the Village with "copies of easements and/or agreements with neighboring property owners for work to be conducted on their premises." (Overhoff Aff. at Ex. D.)

On April 14, 1999, one of the Village consultants, TRC Raymond Keyes Associates ("RKA"), recommended that work resume, provided that (among other requirements) it was done under the supervision of engineers Carlin Simpson & Associates, and that there would be no encroachment into adjacent properties without proper easement agreements in place. RKA also recommended putting up temporary walls to secure a building on GDC's property that was subject to unstable slope conditions.

In June 1999, GDC sought to redirect a sewer line to avoid running it through a retaining wall. In order to do so, it was necessary to encroach on plaintiff's property. GDC therefore sought to negotiate an easement with the plaintiff for temporary access onto the plaintiff's property to install the sewer line, and for the right to make subsurface improvements within the easement area. Plaintiff refused GDC's offer of $20,000 for such an easement, and

the offer later was withdrawn. As a result, GDC informed the Village on June 18, 1999 that:

In the event that Ms. Overhoff is unwilling to grant this permission, we will have no recourse except to place the sewer line on the Livingston Ridge property, as originally approved by the Village. We will install a temporary connection and complete the permanent connection as the retaining walls are completed. We will not trespass on Ms. Overhoff's property.

(Overhoff Aff. at Ex. E.)

By letter of July 7, 1999, Slavin wrote to Mark Ginsburg of GDC to express her concerns that site inspections were not being made at Livingston Ridge, pursuant to the site plan resolution. She wrote: "The Village's position on this matter is very simple. It was condition [sic] of site plan approval that a geotechnical engineer provide on site inspections. GDC is not presently living up to that condition." (Id. at Ex. G.)

On July 12, 1999, at Bonsteel's request, RKA visited the Livingston Ridge site, and observed that three two-tiered stone retaining walls had been constructed. They noted that "the transition slope encroaches into the adjacent property to the south of the ... foundation" (Id. at Ex. H.), and that the work deviated from the site plans that were on file with the Village. (Id.) RKA further stated that "[a]lthough discussions with ... GDC indicated that temporary work easement agreements with the adjacent property owner were secured, it is our understanding that the Village had no knowledge of this transaction." (Id.)

On July 22, 1999, a meeting was held between GDC, Bonsteel, Slavin, and the Village's consulting engineers. The Minutes indicate that they decided that "GDC

will perform a condition survey of the Overhoff property and Rudy's terrace. A seismograph will be placed on the terrace and the Overhoff property during the installation of the sheet piles. Michelle Bonsteel will issue a foundation permit (footings only) after the sheet piles have been installed, to allow for the construction of the MSE [mechanically stabilized earth] wall." (Id. at Ex. I.)

After reviewing GDC design drawings, by letter of July 28, 1999 to Village Administrator Margaret Slavin, RKA concluded that the GDC walls "could possibly encroach upon adjacent properties." (Id. at Ex. K.) The letter noted that it was incumbent on an adjacent property owner to permit the contractor to enter on the property for the purpose of inspection, installation of sheeting, bracing, or underpinning as required to protect the adjacent property. However, "Martin Ginsburg has indicated that he has no agreement with the owner of the adjacent property to allow encroachment, temporary or permanent, resulting from ... construction of the Livingston Ridge Project." (Id.) Because GDC did not have an agreement with the owner of the adjacent property, RKA requested a legal opinion as to what the Village's role should be in the matter.

On August 2, 1999, Bonsteel made a site visit to Livingston Ridge. The daily field report from that day says that Bonsteel had decided to contact all parties to inform them that sheeting operations had started, and that "Ginsburg was proceeding at their own risk." (Id. at Ex. M.)

By memo of August 4, 1999 to Bonsteel, another engineer, Converse Consultants, expressed concerns about the stability of the wall to be constructed. According to Converse, none of the walls were designed for seismic conditions. The memo said, in part: "We understand that driving the sheet pile walls is in progress. We strongly recommend the sheet pile wall construction be postponed until all relevant design issues are resolved." (Id. at Ex. L.) On August 12, 1999, Converse again questioned the impact of GDC's proposal to build the wall as designed, and threatened to withdraw from the project if it were to commence in present form. (Id. at Ex. N.)

GDC installed the sheet piling wall and soil anchors, which were driven fifty feet under the plaintiff's property. When plaintiff learned that facilities were being constructed on her property, she demanded that the workmen stop. But the workmen ignored her instructions and continued. Plaintiff then contacted the Village Police Department, which sent officers to plaintiff's residence. The police officers refused to intervene, but they attempted to contact Bonsteel. Because she was unavailable, the assistant building administrator, Mr. Dunn, told them that he would confirm that the work was being performed consistent with the approved plans.

Dunn allegedly did not inspect the plans, and Overhoff never got an explanation from Bonsteel. Plaintiff contends that Bonsteel and Slavin avoided her, and kept her from gaining information about GDC's actions.

On August 11, 1999, the Village received its opinion from the outside counsel. The outside counsel concluded that the developer of an adjacent property does not have the right to encroach on a neighbor's land for the purpose of protecting its own property. The counsel explained that this is not a case of a right to lateral support, since such a right is to protect land in its natural state. (Silverman Aff. at Ex. B.) However, the legal opinion said that the Village had no obligation to intercede, concluding:

> In sum, the instant dispute is between private parties. Its resolution does not belong to the Village, given the absence

of local, statutory authority on this issue. Rather, its resolution appears to lie within the jurisdiction of a court, which will weigh the equities in a proceeding brought pursuant to Section 881 of the Real Property Actions and Proceedings Law.

(Id.). Section 881 of the RPAPL provides a remedy to an owner seeking to make improvements to real property where permission to enter the premises of an adjoining owner has been refused.

Plaintiff contends that, by declining to stop GDC's encroachment onto her property, defendants failed to comply with the dictates of its own code and applicable state law, and violated her rights to Due Process and Equal Protection under the U.S. Constitution. Defendants argue that plaintiff has no constitutional entitlement to having a village official issue a stop-work order. They further contend that plaintiff was not treated differently from others who were similarly situated.

For the reasons stated below, the moving defendants' motion for summary judgment is granted.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.*, 930 F.2d

1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

When matters outside of the pleadings are presented in response to a motion to dismiss the complaint for failure to state a claim, the court may either exclude the additional material and decide the motion on the complaint alone, or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material. *Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000). In response to defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), plaintiffs submitted documents into the record. Accordingly, I will convert the motion to dismiss into a motion for summary judgment. Unfortunately for plaintiff, her evidence supports, rather than undermines, defendants' motion.

### 1. Due Process Claims

Plaintiff argues that Building Inspector Bonsteel deprived her of her constitutionally-guaranteed property rights by failing to prevent GDC from encroaching on her property without an easement.

In order to maintain a 1983 action, two elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law, and (2) the conduct complained of must have deprived a person of rights and privileges secured by the Constitution or laws of the United States. *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994); *Hazan v. City of New York*, 1999 WL 493352 (S.D.N.Y.1999). Because the actions (and alleged inaction) com-

plained of occurred while the Building Inspector and Village Administrator were acting in their capacity as representatives of the Village of Dobbs Ferry, they were acting under color of law. The question therefore is whether plaintiff was deprived of a right guaranteed by the U.S. Constitution.

■ To demonstrate a violation of due process rights in a land use case, the plaintiff must prove that she possesses a federally-protected property right. *See Vertical Broadcasting v. Town of Southampton,* 84 F.Supp.2d 379 (E.D.N.Y.2000). It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process. *Id.* While Section 1983 is often used as a vehicle to challenge local land use decisions, federal judicial review of decisions in such matters is extremely deferential. As often stated, federal courts hearing civil rights cases do not sit as zoning boards of appeal over local zoning decisions. *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999) (quoting *Village of Belle Terre v. Boraas,* 416 U.S. 1, 13, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting)).

■ In its landmark decision in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that to have a "property" interest entitled to Fourteenth Amendment procedural protection, "a person clearly must have more than an abstract need or desire for it. He must have more than an unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement to it.*" *Id.* at 577, 92 S.Ct. 2701 (emphasis added). The court continued:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*

Plaintiff contends that she has a property right in an undisputed fee interest in her land. She is not, however, arguing that the government actively encroached on her property. Rather, she claims that the Village officials knew that GDC's plans violated the 1996 resolution, and that they nevertheless declined to prevent the construction of a wall on her land in violation of local rules that required easements to be in place in such situations.

■ To succeed on her claim, plaintiff must demonstrate that she has a legitimate claim of entitlement to have the government get involved—in this case, by issuing a stop-work order. Here, plaintiff cannot contend that she was entitled to a stop-work order, because the issuance of such an order is a purely discretionary act. *See Massa v. City of Kingston,* 235 A.D.2d 947, 652 N.Y.S.2d 857 (3d Dep't 1997) ("The action of a building inspector in determining whether or not an applicant is entitled to issuance of a building permit or in the issuance of a stop-work order is discretionary and quasi-judicial in nature."); *City of New York v. 17 Vista Assocs.,* 84 N.Y.2d 299, 618 N.Y.S.2d 249, 642 N.E.2d 606 (1994) ("The decision whether to issue a permit is a discretionary determination and the actions of the government in such instances are immune from lawsuits based on such decisions"). Plaintiff had a right, under New York law, to have the Village's decision made in a manner that was not arbitrary and capricious. But if she thought the Village was acting arbitrarily and capriciously in not issuing the stop work order, she had the means to enforce that right by bringing a

proceeding under C.P.L.R. Article 78 in the New York State Supreme Court. But that did not entitle her to force the Village to take what is purely discretionary action.

This case differs from the fact patterns in most cases of this ilk (and from all cases cited by the parties), because in those cases the plaintiffs asserted a property interest in the government's issuance of a license or certificate that would enable them to make alterations or improvements on their own land. *See, e.g., Yale Auto Parts v. Johnson,* 758 F.2d 54 (2d Cir. 1985) (seeking damages for denial of application for "certificate of location" approval, which was required by Connecticut operate an automobile junkyard business); *Natale,* 170 F.3d at 258 (suing town's planning and zoning commission for violations of a property right in issuance of building and zoning permits required to develop his property); *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.1989) (contending that denial of a building permit violated a right to substantive due process). Here, plaintiff wants the government to stop someone else's project, and seeks damages for its failure to do so. However, at a minimum, plaintiff must make the same level showing to prevail as was required of the plaintiffs who sought permission to use their own land for a particular purpose.

 For state action to be taken (or omitted) in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels "arbitrary" and "outrageous." *Natale,* 170 F.3d at 262 (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998)) ("[T]he touchstone of due process is protection of the individual against arbitrary action of government"); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252,

263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (observing that persons have the "right to be free of arbitrary or irrational zoning actions"); *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1221–22 (6th Cir.1992) ("To prevail, a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the decision."). Even arbitrary conduct that might violate zoning regulations as a matter of state law (and thereby entitle plaintiff to relief in an Article 78 proceeding) is not sufficient to demonstrate conduct so *outrageously arbitrary* as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause. *Natale,* 170 F.3d at 262. Moreover, where a denial of a permit is arbitrary, the fact that the permit could have been denied on non-arbitrary grounds defeats a federal due process claim. *See RRI Realty Corp.,* 870 F.2d at 911.

Bonsteel made a site visit to Livingston Ridge. She noted in her own report that "Ginsburg was proceeding at their own risk" (Overhoff Aff. at Ex. M.), but decided that the Village would not interfere in what it deemed a private dispute between Overhoff and GDC. Plaintiff's right to recourse against GDC for trespass is not disputed. However, because there is no constitutional right to have government officials use their discretion to issue the stop work order, plaintiff does not have a colorable constitutional claim.

Even if plaintiff had established a legitimate claim of entitlement to a stop-work order, there is also nothing in the record to suggest that the officials' inaction occurred under circumstances that were "arbitrary" or "outrageous." In the face of a conflict between two landowners, they sought a legal opinion as to whether the Village had an obligation to intercede.

The opinion informed them that there was no such obligation, and that defendants had rights under New York law if plaintiff were to deny access to them. Although the opinion does not so state, plaintiff had recourse—in the state courts—against GDC's unilateral and unauthorized entry onto her property, and against the Village in an Article 78 proceeding. She refrained from taking this action at her peril.

Therefore, the due process claim against Bonsteel, Slavin and "Richard Doe" for failure to issue the stop work order is dismissed.

## 2. Equal Protection Claim

 The constitutional right to equal protection of the law is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Disabled American Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir.1992). To establish an equal protection violation based upon selective enforcement, a plaintiff must show: (1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based upon impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir.1999); *Latrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir.1999). The "key issue" in an equal protection claim alleging selective enforcement is impermissible motive. *Id.* Thus, it must be shown that the disparate treatment alleged was motivated by an intention to discriminate based upon impermissible considerations, such as race or by a malicious or bad faith intent to injure the person. *See*

*Quinn v. Nassau County Police Department*, 53 F.Supp.2d 347, 355 (E.D.N.Y. 1999).

Plaintiff apparently bases her disparate treatment argument on an April 1999 incident involving GDC's neighbor to the south—Dr. Christine Sekaer. Because of GDC's work, a slope failure adversely impacted Sekaer's property and presented a safety hazard. As a result, Bonsteel issued a stop work order and imposed several restrictions on GDC's work, including a requirement that GDC provide the Village with "copies of easements and/or agreements with neighboring property owners for work to be conducted on their premises." (Overhoff Aff. at Ex. D.).

There is no indication, either in the pleading or the record, of any safety issue that existed on plaintiff's land as a result of GDC's construction of the offending walls. While there was evidence that GDC was encroaching on the Overhoff property, and that plaintiff was concerned about the possibility of damage, there was no allegation of a present safety risk. This is in stark contrast to the Sekaer situation, where, as a result of GDC's work, a slope failure had adversely impacted Sekaer's property and presented a safety risk. The two instances are dissimilar, and therefore cannot form the basis of an equal protection claim.

There is also no allegation in the Amended Complaint that Bonsteel or Slaven acted maliciously or with bad faith to injure plaintiff. In fact, the Village appears to have been acting with the utmost good faith toward her by retaining legal counsel and soliciting a legal opinion when presented with the issue of whether to intercede in her dispute with GDC. Because there is no allegation that Bonsteel or Slaven treated others differently, or that they acted maliciously or in bad faith,

plaintiff's equal protection claim is dismissed.

### 3. *Monell Claims Against Dobbs Ferry*

In order to hold a municipality liable under 1983, a plaintiff must plead and prove a municipal policy or custom that directly caused the constitutional violation. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is well settled that a municipality cannot be liable under 1983 under a theory of respondeat superior or vicarious liability. *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Plaintiff does not allege that her constitutional rights were violated pursuant to any municipal policy or custom. To the contrary, Overhoff's argument is premised on the idea that existing Village policies were not enforced. Therefore, the claim against the Village is the antithesis of a *Monell* claim, and must be dismissed.

### CONCLUSION

The § 1983 claims against defendants Bonsteel, Slavin, "Richard Doe", and the Village of Dobbs Ferry are dismissed.

There is no diversity of citizenship between plaintiff and three private defendants who allegedly trespassed on her property, and her claims against them arise solely under state law. This court declines to exercise jurisdiction over the remaining claims, and they are remanded to the New York State Supreme Court, from whence they came.

This constitutes the decision and order of the Court.