Valerie SACAY, Plaintiff,

v.

**THE RESEARCH FOUNDATION OF THE CITY UNIVERSITY OF NEW YORK, City University of New York, Brooklyn College, Christine L. Persico, and Mary Rose Morris, Defendants.**

No. 97 CV 4006(NG).

United States District Court, E.D. New York.

April 29, 1999.

Antonia Kousoulas, Antonia Kousoulas & Associates, New York City, for plaintiff.

Catherine Maria McGrath, Research Foundation of NY, New York City, Jeanne Lahiff, N.Y. State Dept. of Law, New York City, for defendants.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiff Valerie Sacay brings this action against the Research Foundation of the City University of New York, the City University of New York, Brooklyn College, Assistant Dean for Brooklyn College Christine Persico, and Director of the Office of Adult and Continuing Education at Brooklyn College Mary Rose Morris for discrimination and retaliation under the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112–12117; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.;* the New York State Human Rights Law ("NYSHRL"), Executive Law §§ 296 *et seq.;* the New York City Human Rights Law ("NYCHRL"), Administrative Code of the City of New York § 8–107; and 42 U.S.C. § 1983. Defendants Research Foundation of the City University of New York and Mary Rose Morris move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on all of the claims against them, which, plaintiff clarified on oral argument, do not include those brought under Section 1983. On oral argument of the motion, the remaining defendants City University of New York, Brooklyn College, and Christine Persico requested permission to join

in the motion and to rely exclusively on the arguments presented by defendants Research Foundation and Mary Rose Morris. Finally, plaintiff has requested leave to amend the complaint in the event defendants' motion is granted.

## FACTS

The following facts are taken from plaintiff's complaint.

Plaintiff Valerie Sacay was hired as an administrative assistant by defendant Research Foundation of the City University of New York on May 1, 1989 to work at the Office of Adult and Community Education (now the Office of Adult and Continuing Education). Her primary responsibility was the design and production of the Adult and Community Education Catalog. She was promoted to the position of Research Assistant B on July 2, 1994, which entailed the additional responsibilities of developing and upgrading a computerized registration program, creating and managing new databases, and supervising data entry personnel. Between March 1992 and December 1994, plaintiff performed some of her responsibilities from her home with the use of a computer and printer provided by defendants. Plaintiff's work at home was for the convenience of defendants, and she also worked on a flexible schedule to accommodate defendants' work demands. Complaint at ¶ 16.

In December 1994, plaintiff took sick leave from her job. Although she was using her accrued sick leave time, her supervisors, defendants Christine Persico and Mary Rose Morris, placed a number of "harassing" telephone calls to her during her leave. Plaintiff does not specify what was said during these calls, but alleges that the calls caused her blood pressure to rise to "dangerous levels," requiring her to see a cardiologist on two occasions in January 1995, and to be hospitalized for stress related chest pain. Complaint at ¶ 17.

As for her physical impairments, plaintiff lists a number of medical conditions. She was diagnosed with complex partial seizure disorder (epilepsy) in 1986, a myocardial infarction in 1992, and degenerative disc disease of the cervical spine in 1993. Complaint at ¶ 14. In January 1995 she was diagnosed with stress-related gastritis and spastic colitis, which developed into acute irritable bowel syndrome, and in March 1995 she was diagnosed with a duodenal ulcer and acute gastritis. Complaint at ¶ 18. Plaintiff does not specify which of these stated medical conditions rises to the level of a disability under the statutes upon which she bases her present claims and requires accommodation by her employer.

While plaintiff was still out on sick leave, defendant Persico informed her on January 20, 1995 that she would not be allowed to return to her position until she met with defendants. Complaint at ¶ 19. Plaintiff notified defendants on March 17, 1995 of her intention to return to work and requested that a "meeting be held to discuss her transition back to work and her demand for reasonable accommodations." Complaint at ¶ 19.

Plaintiff alleges that she was "medically ready" to return to work as of May 1, 1995, but a meeting to discuss her return was not held until May 24, 1995. Complaint at ¶ 19. In support of her ability to return to work, plaintiff faxed a letter on April 11, 1995 from Dr. Bernard B. Yonk, her gastroenterologist, to the Office of Adult and Continuing Education and to the Research Foundation. The letter indicated that plaintiff would be able to return to work on May 1, 1995 on a schedule of 15 hours per week initially, and increasing by five hour increments each week until she was eventually able to resume a full-time schedule. Complaint at ¶ 20. She also informed her employer of her ability to resume her responsibilities with reasonable accommodations such as working from home on a computer and/or the use of flexible hours. Complaint at ¶ 21.

Although plaintiff believed the purpose of the eventual May 24, 1995 meeting was

to discuss the topic of reasonable accommodations for her disabilities, she was instead informed at that meeting that her position had been "retrenched" as of that very day. Complaint at ¶ 22. Defendants later retracted this statement and instead placed plaintiff on "administrative leave off campus" against her wishes. Plaintiff sent a letter on June 21, 1995 to the Research Foundation, the Vice Chancellor of the City University of New York and the President of Brooklyn College expressing her desire to return to work. Supporting documents from her gastroenterologist and her neurologist were attached to this letter. Complaint at ¶ 23. Notwithstanding, plaintiff was terminated from her position on June 30, 1995.

Plaintiff filed a complaint with the EEOC on July 11, 1995 and obtained a right to sue letter. She filed this action on July 14, 1997.

### DISCUSSION

**Standard of Review**

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir.1988). The standard of review for a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). Accordingly, a court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992). A court may consider the factual allegations and attached exhibits in the plaintiff's complaint, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents that were relied upon by the non-movant when bringing the action. *See*

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *See Sheppard*, 18 F.3d at 150 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Under the modern rules of pleading, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R.Civ.P. 8(a)(2), and "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f). On the other hand, a complaint must allege sufficient facts to provide the "defendant fair notice of the nature of the claim and the grounds upon which it rests." *Washington v. James*, 782 F.2d 1134, 1140 (2d Cir.1986). "Where the allegations are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, they are meaningless as a practical matter and legally insufficient to state a claim." *Parisi v. The Coca-Cola Bottling Co. of New York*, 995 F.Supp. 298, 300–01 (E.D.N.Y.1998). As stated by Professors Wright and Miller, "great generality in the statement of these circumstances will be permitted as long as defendant is given fair notice of what is claimed," but Rule 8(a)(2) requires that the "pleader disclose adequate information concerning the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 (1990). The level of specificity and detail required to give "fair notice" will vary depending upon the substantive claim raised by a plaintiff; "[t]o put it another way, the more substantively complex the cause of action, the greater the mandate for detail under [Rule 8(a)(2) ]." *Loftus v. Southeastern Pennsylvania Transp. Auth.*, 843 F.Supp. 981, 986 (E.D.Pa.1994).

## Disability Under the ADA

■ The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees. . . ." 42 U.S.C. § 12112(a). A plaintiff bringing a claim of discriminatory discharge under the ADA bears the initial burden of establishing a prima facie case of discrimination. To meet this burden, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir. 1998). The ADA describes an individual as suffering from a "disability" if she makes a showing of any one of the following: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Only a 'qualified individual with a disability' may state a claim for discrimination under the ADA;" even if a plaintiff alleges a firing because of a medical condition, she can bring a claim under the ADA only if her medical condition rises to the level of a "disability." *Parker v. Sony Pictures Entertainment, Inc.*, 19 F.Supp.2d 141, 147 (S.D.N.Y.1998).

Plaintiff does not allege that she was unjustly regarded as having a medical impairment when she in fact was not disabled. Therefore, the court's analysis focuses on the legal standard required in order to establish a "disability" as defined under either subsection A or B of Section 12102(2) of the ADA and whether plaintiff's complaint alleges sufficient facts to meet this standard. In a recent decision, the Supreme Court articulated a three step process for evaluating a claim of "disability" as defined under the ADA. *See*

*Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). First, the Court determined whether the plaintiff suffered from a physical or a mental impairment. Second, the Court identified the life activity indicated by the plaintiff and considered whether it qualified as a "major life activity" under the ADA. Finally, the Court determined whether the claimed impairment substantially limited the major life activity. *See id.* Under this analysis, "a plaintiff who showed that [s]he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible if the limitation of the major life activity was not substantial." *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir.1998).

Although the ADA does not define "major life activities" or "substantial limit[ation]," the regulations promulgated by the EEOC under the ADA provide guidance in interpreting the ADA. *See, e.g., Ryan*, 135 F.3d at 870; *Francis v. City of Meriden*, 129 F.3d 281, 283 n. 1 (2d Cir. 1997). "Major life activities" are defined under the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" is defined as:

(i) unable to perform a major life activity that the average person in the general population can perform; or

(ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

Courts have differed over the pleading requirements for an ADA claim. For example, in *Buckley v. Consolidated Edison Co. of New York, Inc.*, 908 F.Supp. 217, 219 (S.D.N.Y.1995), the court dismissed the plaintiff's complaint for failing to allege

other than in a "conclusory manner" that a " 'neurogenic bladder' is a disability under the ADA, *i.e.,* a physical or mental impairment that substantially limits one or more of his major life activities." *Id.* The court in *Fedor v. Illinois Dep't of Employment Security,* 955 F.Supp. 891, 893 (N.D.Ill. 1996), dismissed the plaintiff's complaint because he "never states that his impairment substantially limits a major life activity such as working, which he must do to plead disability discrimination under the ADA." *Id.* Similarly, the court in *Parisi* required that the plaintiff "allege a factual basis that would support a finding of 'substantial limitation of a major life activity,' and may not rely upon conclusory allegations of such a limitation." *Parisi,* 995 F.Supp. at 302. *Cf. Magee v. Nassau County Medical Center,* 27 F.Supp.2d 154, 162 (E.D.N.Y.1998) (allegations of disability which were based simply on "back and carpal tunnel problems" and which were "meager and require a fair amount of inference in [plaintiff's] favor" were nonetheless sufficient to withstand a motion to dismiss where plaintiff had identified her disability, claimed she was terminated because of it, was pro se, and filled out a form complaint).

In contrast, other courts have accepted more conclusory claims. *See, e.g., Andriacchi v. City of Chicago,* 1996 WL 685458, at *2 (N.D.Ill.1996) (accepting as sufficient "completely conclusory" claim that "Andriacchi is a qualified individual with a disability as that term is defined in the ADA"); *Moore v. Cook County Hosp. Civil Serv. Comm'n of Cook County,* 1997 WL 529550, at *2 (N.D.Ill.1997) (upholding complaint even where no explicit claim that alleged disability substantially limits one or more major life activities); *Muller v. Costello,* 1996 WL 191977, at *4 (N.D.N.Y.1996) (upholding complaint where it alleged that plaintiff suffers from asthma but is otherwise able to fulfill his job responsibilities, even though it did not state that the disability substantially limits a major life activity).

The court in *Adler v. I & M Rail Link, L.L.C.,* 13 F.Supp.2d 912, 938 (N.D.Iowa 1998), "suspected" that the "confusion" among the courts about the pleading requirements for an ADA disability claim stems in part from the fact that "disability" as defined under the ADA is a "legal conclusion drawn from facts, not a purely 'legal' or 'factual' conclusion." *Id.* The court found, therefore, that it is "not sufficient for a plaintiff to plead simply that he or she was 'disabled within the meaning of the ADA,' without also pleading some factual basis from which inferences supporting this legal conclusion can be drawn." *Id.* The court granted the defendants' motion to dismiss with leave to replead "adequately that the plaintiffs are disabled ... by identifying each plaintiff's specific impairment or injury and the major life activity that impairment or injury substantially limits...." *Id.*

Here, plaintiff's complaint states that she is an individual with disabilities within the meaning of 42 U.S.C. §§ 12112–12117. Complaint at ¶ 7. In the course of the complaint, she lists multiple medical conditions including complex partial seizure disorder, diagnosed in 1986; post-operative non-Q-wave myocardial infarction, diagnosed in 1992; degenerative disc disease of the cervical spine, diagnosed in 1993 and which later developed into sciatica from a herniated disc; and finally in 1995, hypertension, irritable bowel syndrome, acute gastritis, spastic colitis, and a duodenal ulcer. However, the complaint never identifies any one ailment or combination of ailments that she alleges qualifies as a disability under the ADA, and never identifies what major life activity has been substantially limited by the disability.

■ I conclude that the complaint fails to comply with the requirements of Rule 8 for stating a claim under the ADA. Given that the ADA is a complex statute where the term "disability" is a term of statutory art, it is not enough for a counseled plaintiff to submit a complaint which never specifies either the impairment that she

claims constitutes a disability, nor identifies the major life activity which it substantially limits, that is, that does not specify the facts that would state a claim under the statute.[1] Mindful both of the liberality of the modern rules of pleading and of the need for fair notice to the defendants so that they can frame an answer, *see* discussion *supra* p. 499, I cannot conclude that this complaint meets the standards of Rule 8. Requiring an attorney to identify the substantial limitation of a major life activity is hardly an onerous task. However, doing so would vastly increase the efficiency of pretrial proceedings, for it would permit the defendants to file a meaningful answer and could dramatically limit the scope, and therefore the expense to all sides, of discovery. *See* Fed.R.Civ.P. 1 ("[The Federal Rules of Civil Procedure] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."). Thus, plaintiff's ADA claim must be dismissed and plaintiff will be granted leave to amend the complaint.

## Disability Under the Rehabilitation Act of 1973

Section 504(a) of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The ADA's definition of disability is drawn almost verbatim from the statutory language of the Rehabilitation Act, *see Bragdon*, 118 S.Ct. at 2202, and the terms common to both regulatory schemes are to be interpreted in the same way, *see Stone v. City of Mount Vernon*, 118 F.3d 92, 96 (2d Cir.1997). To bring a claim under the Rehabilitation Act, plaintiff must show, as under the ADA, that her impairment qualifies as a disability that substantially limits a major life activity. *See* 29 U.S.C. § 794(d). Plaintiff's claim of discrimination under the Rehabilitation Act is subject to the same flaws as her claim under the ADA.

## Disability Under NYSHRL and NYCHRL[2]

The definition of a disability under the NYSHRL is similar to the definition under the ADA. *See Schwartz v. Comex*, 1997 WL 187353, at *3 (S.D.N.Y.1997). According to the NYSHRL, a disability is "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y.Exec.Law § 292(21). However, the range of impairments that may potentially qualify as a disability is broader under the NYSHRL, *see Reeves*

---

1. On oral argument, plaintiff's counsel asserted that plaintiff's need to be near a bathroom is the substantial limitation of a major life activity, which suggests that plaintiff's most recent diagnoses of stress-related gastritis, spastic colitis, and acute irritable bowel syndrome are the particular impairments she is claiming as disabilities under the ADA. Other courts reviewing claims of disability based on colitis have determined that its symptoms do not rise to the level of severity, frequency and duration required for a finding of disability under the ADA. *See, e.g., Ryan*, 135 F.3d at 871; *Johnson v. New York Medical College*, 1997 WL 580708, at *6 (S.D.N.Y.1997); *Caporilli v. City of Rome*, 1992 WL 209327 (N.D.N.Y.1992). Especially under these circumstances, *i.e.*, where the existence of a disability that substantially limits a major life activity is not obvious from the mere statement of the condition, additional factual allegations articulating a substantial limitation of a major life activity are necessary to state a claim.

2. Because all the federal claims against defendants Research Foundation of the City University of New York and Mary Rose Morris are being dismissed, if plaintiff is unable to replead a federal claim, the exercise of supplemental jurisdiction over plaintiff's state and city law claims would not be proper. *See* 28 U.S.C. § 1367(c)(3). However, since leave to amend is being granted, plaintiff's state and city law claims will be addressed below.

*v. Johnson Controls World Serv.*, 140 F.3d 144, 154–56 (2d Cir.1998), and "covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future," *id.* at 155 (citing *State Div. of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 218–19, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985)). In contrast to the ADA, an individual need not show a substantial limitation of her normal activities to prove a disability under the NYSHRL, but instead need only establish that her impairment is "demonstrable by medically accepted techniques." *Hazeldine v. Beverage Media, Ltd.*, 954 F.Supp. 697, 706 (S.D.N.Y.1997).

The New York City Administrative Code defines "disability" in even broader terms than the NYSHRL and the ADA, for it states that it can be a "physical, medical, mental, psychological, impairment, or a history or record of such impairment." Administrative Code of the City of New York § 8–102(16). The Administrative Code does not specify a particular degree of limitation or impairment of an individual's activities. *See Sweet v. Electronic Data Systems, Inc.*, 1996 WL 204471, at *10 (S.D.N.Y.1996). "It is enough that the condition impairs any body system." *Hazeldine*, 954 F.Supp. at 706.

Nonetheless, Rule 8 requires that a plaintiff do more than identify every medical condition that she has ever experienced and expect a defendant to answer as to each. For the reasons set forth as to the ADA above, the state and local claims also fail to comply with Rule 8.

### Individual Liability Under the ADA

■ Under *Tomka v. Seiler*, 66 F.3d 1295 (2d Cir.1995), the Second Circuit has determined that "an employer's agent may not be held personally liable under Title VII." *Id.* at 1317. The Second Circuit has not addressed directly whether employees may be held individually liable under the

ADA. However, the Seventh and Eleventh Circuit Courts of Appeals have held that individuals who do not fall under the statutory definition of "employer" under the ADA cannot be held individually liable under the statute. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996); *U.S. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir.1995). And district courts in the Second Circuit have similarly determined that individuals may not be held personally liable under the ADA. *See, e.g., Corr v. MTA Long Island Bus*, 27 F.Supp.2d 359, 370 (E.D.N.Y. 1998); *Doyle v. Columbia–Presbyterian Medical Ctr.*, 1998 WL 430551, at *1–2 (S.D.N.Y.1998); *Harrison v. Indosuez*, 6 F.Supp.2d 224, 229 (S.D.N.Y.1998); *Passamonti v. Itochu Int'l, Inc.*, 1998 WL 107165, at *2–3 (S.D.N.Y.1998). I agree with these decisions; therefore, plaintiff's ADA claims against defendants Morris and Persico individually are dismissed.

### Individual Liability Under the NYSHRL and NYCHRL

Unlike Title VII and the ADA, the NYSHRL imposes individual liability for discriminatory acts on individuals who have an ownership interest in the defendant company or have power over personnel decisions. *See Tomka*, 66 F.3d at 1317 (citing *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984)). Some district courts in the Second Circuit have held, alternatively, that individuals are personally liable under Section 296(6) of the New York Executive Law for aiding, abetting or inciting discrimination. *See Abdullajeva v. Club Quarters, Inc.*, 1996 WL 497029, at *5–6 (S.D.N.Y.1996). In *Bonner v. Guccione*, 1997 WL 362311, at *15 (S.D.N.Y.1997), the court held the defendant personally liable even absent a finding of active participation where Guccione had undisputed ownership interest and evidence established his control over personnel decisions. Similarly, the NYCHRL provides that individuals may be held liable for their acts

of employment discrimination. *See Cronin v. Hall Street Cold Storage Warehouses, Inc.,* 1997 WL 720753, at *9 (E.D.N.Y. 1997).·

■ Plaintiff has alleged that Morris and Persico were her supervisors and specifies that Persico informed her that she could not return to work absent a meeting. While plaintiff does not specify the individual defendants' role in the allegedly discriminatory termination, these allegations are a minimally sufficient basis for individual liability under the NYSHRL and the NYCHRL because it can be inferred that these individuals played a role in the decision. Unlike claims of disability and substantial limitation of a major life activity, the exact role of the individual defendants is not something necessarily known to a plaintiff prior to discovery. Therefore, the claims of individual liability under the state and local laws can survive if the plaintiff can plead the elements of a disability claim.

**Retaliation Under the ADA, the Rehabilitation Act, NYSHRL, and NYCHRL**

■ In order to state a claim for retaliation under the ADA or the Rehabilitation Act, plaintiff must show that: (1) she engaged in an activity protected by the statutes; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *See, e.g., Sands v. Runyon,* 28 F.3d 1323, 1331 (2d Cir. 1994); *Charlotten v. The May Dep't Stores Co.,* 1998 WL 635547, at *4 (S.D.N.Y.1998). New York courts apply the same analysis for retaliation claims under the NYSHRL and the NYCHRL as are applied in federal employment cases. *See Hendler v. Intelecom USA, Inc.,* 963 F.Supp. 200, 211 (E.D.N.Y.1997); *Ettinger v. State Univ. of New York State College of Optometry,* 1998 WL 91089, at *9–10 (S.D.N.Y.1998). Protected activities include the filing of a complaint with the EEOC, *see Parker,* 19 F.Supp.2d at 152, and, under the federal laws, the request for reasonable accommo-

dations, *see Muller,* 1996 WL 191977, at *6. In contrast, the NYSHRL does not require an employer to provide "reasonable accommodations" for an employee's disability; therefore, complaints about the lack of reasonable accommodations do not qualify as protected activities under the NYSHRL. *See Hendler,* 963 F.Supp. at 213.

Plaintiff's complaint alleges that she engaged in the protected activity of requesting reasonable accommodations. Plaintiff's opposition papers make the additional assertion that she engaged in the protected activity of generally opposing "defendants' discriminatory refusal to permit her to return to work." Plaintiff therefore argues that she satisfies the first element of establishing a prima facie case of retaliation under the ADA, the Rehabilitation Act, the NYSHRL and the NYCHRL.

·. The first mention of a protected activity in plaintiff's complaint comes in paragraph 19, which states that "[o]n March 17, 1995, plaintiff notified defendants of her intentions to resume her work and requested that a meeting be held to discuss her transition back to work and *her demand for reasonable accommodations.*" Complaint at ¶ 19 (emphasis added). Plaintiff's complaint also cites "repeated requests" to meet and discuss her need for reasonable accommodations, Complaint at ¶ 21, but includes no references to specific communications or the content of such communications.

■ Construing the complaint in the light most favorable to plaintiff, she has failed to identify any actions on her part that would qualify as protected activities under the relevant federal, state and city statutes. While the complaint alleges "repeated requests for accommodations," the only specific occasion identified is the March 17, 1995 request. However, defendants have submitted a March 17, 1995 letter, which is addressed to John Zummo, Director of the Office of Human Resources at the Research Foundation, and is signed

by Antonia Kousoulas, plaintiff's counsel. The letter states, in its entirety: "I am an attorney for Ms. Valerie Hakam Sacay. I have reviewed your letter to my client, dated February 24, 1995, regarding the scheduling of a meeting with her. Please call me at your earliest convenience so that we may discuss the terms, conditions and timing of the meeting. Thank you." Because it is referenced in the complaint, the letter can be considered on this motion to dismiss. *See Brass*, 987 F.2d at 150. The letter makes no mention of plaintiff's disabilities or her need for reasonable accommodations. On oral argument, plaintiff's counsel attempted to counter this fact by suggesting that the request for reasonable accommodations was made not by way of this letter but through other means. However, counsel was unable to identify a single such oral or written communication and requested leave, if the motion to dismiss were granted, to file an amended pleading if her client could confirm that such a request had been made. Similarly, plaintiff's "general opposition" to her employer's allegedly discriminatory denial of her desire to return to work is mentioned only in her opposition papers, not in the complaint, which identifies no specific actions which would establish a retaliation claim. Even if the complaint alleged her "opposition," that would not be enough for she must allege *activity* of which the defendants were aware and not just her state of mind. *See Doyle*, 1998 WL 430551, at *3. Otherwise, there could be no causative effect on the defendants' actions. As plaintiff has failed to allege that she engaged in any protected activities that could have caused the alleged adverse action, she cannot make a prima facie showing of retaliation and her claims under the federal, state and city laws must be dismissed.

**Co–Defendants' Request to Join in the Present Motion**

Although belated, the remaining co-defendants City University of New York, Brooklyn College and Christine Persico have moved to join in the motion for judgment on the pleadings. As the arguments proffered by defendants Research Foundation and Morris apply equally to co-defendants, and the delay in moving does not prejudice plaintiff, co-defendants' request to join in the motion is granted.

### Conclusion

All defendants' motions for judgment on the pleadings are granted in their entirety and all claims against all defendants are dismissed. Plaintiff's motion for leave to amend her complaint is granted as to all defendants except as to the individual defendants Morris and Persico for claims under the federal laws; as to these claims, amendment will not be permitted. Any amended complaint must be served and filed within 20 days from the date of this Order.

**SO ORDERED.**